# United States District Court

**EASTERN DISTRICT OF TEXAS**
**TEXARKANA DIVISION**

| | | |
|---|---|---|
| **MAXELL, LTD.,** | § | |
| | § | |
| **v.** | § | **No. 5:24-CV-00088-RWS-JBB** |
| | § | |
| **CORETRONIC CORP. AND OPTOMA** | § | |
| **CORP.** | § | |

## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

This case is referred to the undersigned United States Magistrate Judge for pretrial purposes in accordance with 28 U.S.C. § 636. Before the Court is Defendants' Motion to Dismiss Plaintiff's Complaint Under Fed. R. Civ. P. 12(b)(2), 12(b)(6), and 12(b)(7) (Dkt. No. 20). The Court, having carefully considered the relevant briefing, recommends the motion be **DENIED**.

## I. BACKGROUND AND ARGUMENTS

Plaintiff Maxell, Ltd. ("Maxell") asserts Coretronic Corp. ("Coretronic") and its wholly owned corporate subsidiary Optoma Corp. ("Optoma") (collectively, "Defendants") directly and indirectly (through inducement and contributory infringement) infringe seven patents owned by Maxell. Maxell is a Japanese corporation with a registered place of business in Kyoto, Japan. Dkt. No. 1, ¶¶ 23, 28. Coretronic and Optoma are Taiwanese corporations with principal places of business in Taiwan. *Id.*, ¶¶ 24, 26.

The complaint alleges four separate theories as to how personal jurisdiction exists over Defendants in this District: (1) stream of commerce, (2) alter ego, (3) agency, and (4) via Federal Rule of Civil Procedure 4(k)(2). Specifically, Maxell alleges Defendants offer to sell and/or sell the "Accused Products" (as defined in the complaint) in the United States directly to their

1

subsidiaries, sister companies, affiliates, and/or partners, thereby committing infringing acts under 35 U.S.C. § 271(a). *Id.*, ¶ 30. Maxell further alleges Defendants, as principals, direct their agents (subsidiaries and/or sister companies) to make, use, sell, offer to sell, and/or import the Accused Products in or into the United States, thereby committing infringing acts under § 271(a). *Id.*, ¶¶ 31-32, 40 (Coretronic), 73 (Optoma). Maxell further alleges Defendants should be held liable for the infringing acts of their subsidiaries as an alter ego because Defendants and their subsidiaries and/or sister companies "have such unity of interest, ownership, and/or control that the separate personalities of the corporation and its subsidiaries no longer exist and that an inequitable result will follow if the acts giving rise to infringement are treated as those of" Coretronic and Optoma alone. *Id.*, ¶¶ 33-34, 41 (Coretronic), 74 (Optoma). Maxell also contends Defendants induce their subsidiaries, sister companies, affiliates, partners, and/or customers to make, use, sell, offer to sell, and/or import Accused Products or components, sub-system, and system solutions of the Accused Products in the United States, including in the state of Texas and this District, thereby committing infringing acts under 35 U.S.C. § 271(b). *Id.*, ¶ 35. Maxell further alleges Defendants, as principals directing their agents and as alter egos of their subsidiaries and/or sister companies, should be held liable for the infringing acts of their subsidiaries under 35 U.S.C. § 271(c). *Id.*, ¶ 37.

Defendants move to dismiss Maxell's complaint under Federal Rules of Civil Procedure 12(b)(2) and 12(b)(7) and/or 19(a)(3) for two reasons: (1) because Maxell cannot establish jurisdiction over Defendants in the Eastern District of Texas; and (2) because Maxell's infringement allegations seek to hold Defendants responsible for actions that are solely attributable to Optoma Technology, Inc. (hereinafter, "Optoma USA"), a different and legally distinct entity. Dkt. No. 20 at 1. Defendants also move to dismiss under Rule 12(b)(6), asserting Maxell has not pleaded "any facts that, accepted as true, would support a plausible conclusion that: (i) Defendants

performed any act of alleged infringement in the United States; and/or (ii) Defendants knowingly acted with the specific intent to cause the infringement of any third party." *Id*.

Included with Defendants' motion is the Declaration of Ying-Hui (Katherine) Liang ("Liang Decl."), who is General Counsel with Defendant Coretronic. Ms. Liang declares:

> 3. Defendant Coretronic Corp. has no offices or physical presence in the United States.

> 4. Defendant Coretronic Corp. is not registered to do business in the State of Texas and does not engage in activities in the State of Texas. Coretronic Corp. does not regularly conduct and transact business in Texas, in general or with respect to the Accused Products.

> 6. Defendant Optoma Corp. has no offices or physical presence in the United States.

> 7. Defendant Optoma Corp. is not registered to do business in the State of Texas and does not engage in activities in the State of Texas. Optoma Corp. does not regularly conduct and transact business in Texas, in general or with respect to the Accused Products.

> 8. [Optoma USA] is organized and exists under the laws of the State of California. . . . Optoma USA's office is located in Fremont, California.

> 9. Several of Optoma USA's employees and former employees with knowledge relating to the Accused Products reside in or near Fremont, California. Optoma does not solicit employees to live or work in the Eastern District of Texas and does not require any of its employees to live or work in the Eastern District of Texas.

Liang Decl., Dkt. No. 20-1.

In response, Maxell argues Defendants' Rule 12(b)(2) motion to dismiss should be denied because the complaint's allegations are more than sufficient to create a *prima facie* case, under four distinct theories, in favor of exercising personal jurisdiction in this District: First, Maxell asserts the complaint sufficiently alleges that personal jurisdiction exists under a stream of commerce theory. Dkt. No. 41 at 1. Next, Maxell argues the complaint also supports the exercise of personal jurisdiction under both alter ego and agency theories, neither of which Defendants

address in their motion.[1] *Id.* Finally, Maxell contends Defendants "entirely ignore" the complaint's alternative Rule 4(k)(2) basis for personal jurisdiction. *Id.*

Maxell further asserts Defendants' Rule 12(b)(7) motion to dismiss fails to satisfy the standard for establishing Optoma USA—a mere marketing and sales subsidiary of Defendants—as a necessary party under Rule 19. *Id.* at 1-2. Finally, Maxell argues Defendants' Rule 12(b)(6) motion to dismiss should be denied because the complaint provides Defendants with full, fair notice of the basis of Maxell's direct and indirect infringement claims and the liability theories on which they rest. *Id.*

## II. RULE 12(b)(2) MOTION TO DISMISS

As explained in detail below, the complaint sufficiently alleges that personal jurisdiction exists in this District through a stream of commerce theory, and Defendants' Rule 12(b)(2) motion should therefore be denied. Alternatively, the Court has personal jurisdiction over Defendants pursuant to Rule 4(k)(2).[2]

### A. Applicable legal standards

"Federal Rule of Civil Procedure 12(b)(2) requires a court to dismiss a claim if the court does not have personal jurisdiction over the defendant." *Eireog Innovations Ltd. v. Lenovo Grp. Ltd.*, No. 2:24-CV-00239-JRG, 2024 WL 4519763, at *1 (E.D. Tex. Oct. 17, 2024) (quoting *Cunningham v. CBC Conglomerate, L.L.C.*, 359 F. Supp. 3d 471, 476 (E.D. Tex. 2019)). Where a claim involves substantive questions of patent law, the court applies Federal Circuit law to evaluate

---

[1] Although Defendants dispute that Optoma USA is an alter ego of Defendants in the context of whether Optoma USA is a necessary party under Rule 12(b)(7), *see* Dkt. No. 20 at 16-17, Maxell argues that Defendants fail to tie these arguments to personal jurisdiction under Rule 12(b)(2).

[2] Because the Court finds personal jurisdiction proper under the stream of commerce theory, and alternatively under Rule 4(k)(2), the Court need not decide whether Maxell's alter ego and agency theories would be sufficient as distinct theories to establish specific jurisdiction.

personal jurisdiction. *Id.* (citing *NexLearn, L.L.C. v. Allen Interactions, Inc.*, 859 F.3d 1371, 1375 (Fed. Cir. 2017)). However, the Fifth Circuit relies on the same analysis as the Federal Circuit in deciding whether personal jurisdiction exists. *Id.* (citing *Packless Metal Hose, Inc. v. Extek Energy Equip.*, No. 2:09-CV-265-TJW, 2011 WL 504048, at *1 n.1 (E.D. Tex. Feb. 10, 2011)).

"A court has personal jurisdiction over a nonresident defendant if the forum state's long-arm statute permits service of process and the assertion of personal jurisdiction comports with due process." *Arigna Tech. Ltd. v. Bayerische Motoren Werke AG*, 697 F. Supp. 3d 635, 641 (E.D. Tex. 2023) (quoting *New World Int'l, Inc. v. Ford Glob. Techs., L.L.C.*, 859 F.3d 1032, 1037 (Fed. Cir. 2017); also citing *Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd.*, 818 F.3d 193 (5th Cir. 2016)). Because Texas' long-arm statute extends to the limits of federal constitutional due process, only the latter inquiry is required. *Id.* For personal jurisdiction to comport with due process, the nonresident defendant must have certain minimum contacts with the forum such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice. *Id.*; *see also Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

**B.      Specific jurisdiction exists under a stream of commerce theory**

**1.      Applicable law**

"The Federal Circuit applies a three-prong test to determine if specific jurisdiction exists: (1) whether the defendant purposefully directed activities at residents of the forum; (2) whether the claim arises out of or relates to those activities; and (3) whether assertion of personal jurisdiction is reasonable and fair." *Eireog*, 2024 WL 4519763, at *1 (quoting *Nuance Commc'ns, Inc. v. Abbyy Software House*, 626 F.3d 1222, 1231 (Fed. Cir. 2010)). "The first two factors correspond with the 'minimum contacts' prong of the [*International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945)] analysis, and the third factor corresponds with the 'fair

play and substantial justice' prong of the analysis." *Xilinx, Inc. v. Papst Licensing GmbH & Co. KG*, 848 F.3d 1346, 1353 (Fed. Cir. 2017) (citation omitted).

The plaintiff bears the burden to show that the defendant has minimum contacts with the forum under the first two prongs. *Eireog*, 2024 WL 4519763, at *1 (citing *Elecs. for Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1350 (Fed. Cir. 2003)). Upon a showing of minimum contacts, the defendant bears the burden to prove unreasonableness. *Id.* In rare circumstances, a defendant may defeat the exercise of personal jurisdiction by "present[ing] a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)).

The minimum contacts test is satisfied if a defendant "delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum state." *Id.* at *2 (quoting *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1566 (Fed. Cir. 1994) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297-98 (1980))). The existence of an "established distribution channel into the forum" is a "significant factor" when evaluating the strength of a non-movant's stream of commerce theory. *Id.* (citing *Beverly Hills Fan*, 21 F.3d at 1565 n.15). In *Beverly Hills Fan*, the Federal Circuit found the plaintiff stated "all of the necessary ingredients for an exercise of jurisdiction consonant with due process: defendants, acting in consort, placed the accused fan in the stream of commerce, they knew the likely destination of the products, and their conduct and connections with the forum state were such that they should reasonably have anticipated being brought into court there." 21 F.3d at 1566.

"For purposes of specific personal jurisdiction, the contacts of a third-party may be imputed to the defendant under either an agency or alter ego theory." *Celgard, L.L.C. v. SK Innovation Co., Ltd.*, 792 F.3d 1373, 1379 (Fed. Cir. 2015). Under both agency and alter ego theories, personal

jurisdiction cannot be exercised over a defendant on the basis of unilateral acts of third parties. *Fellowship Filtering Techs., L.L.C. v. Alibaba.com, Inc.*, 2:15-CV-2049-JRG, 2016 WL 6917272, at *2 (E.D. Tex. Sept. 1, 2016) (citing *Celgard*, 792 F.3d at 1380 (citing *Hanson v. Denckla*, 357 U.S. 235, 253–54 (1958))). Even under a theory of imputed contacts, the defendant must "deliberately. . . engage[] in significant activities within a State" in order for exercise of personal jurisdiction to comport with due process. *Id.* (quoting *Nuance*, 626 F.3d at 1232 (quoting *Burger King*, 471 U.S. at 475–76)).

"To impute the contacts of a third party to the defendant under an alter ego theory, the lines between the defendant and the third party must become 'so blurred that the two become one.'" *Wapp Tech Ltd. P'ship v. Micro Focus Int'l, PLC*, 406 F. Supp. 3d 585, 595 (E.D. Tex. 2019) (quoting *Fellowship Filtering*, 2016 WL 6917272, at *2 (quoting *QR Spex, Inc. v. Motorola, Inc.*, 507 F. Supp. 2d 650, 663 (E.D. Tex. 2007))). However, "[a]s a general matter, the corporate form should not be lightly disregarded." *Id.* (quoting *Fellowship Filtering*, 2016 WL 6917272, at *2 (citing *Manville Sales Corp. v. Paramount Sys. Inc.*, 917 F.2d 544, 552 (Fed. Cir. 1990))). "As a result, the typical corporate relationship between a parent and subsidiary. . . is not a sufficient basis to impute the contacts of a third party to the defendant under an alter ego theory." *Id.* (quoting *Fellowship Filtering*, 2016 WL 6917272, at *2 (citing *QR Spex, Inc.*, 507 F. Supp. 2d at 663)).

2. **Analysis**

a. **Defendants have purposefully directed activities at residents of the forum.**

In their motion, Defendants address Maxell's "primary basis for jurisdiction"—that Defendants place their products into the stream of commerce knowing that those products are destined for the United States and Texas. Dkt. No. 48 at 1-2. Defendants assert Maxell has identified no physical activities relating to the Accused Products in which Defendants *themselves*

are alleged to have engaged in Texas. Dkt. No. 20 at 9 (emphasis added). Drawing support from the declaration of Ms. Liang, Coretronic's general counsel, Defendants argue (1) they are located in Taiwan and have no physical presence in Texas; (2) they engage in no physical activity in Texas and do not regularly conduct and transact business in Texas, in general or with respect to the Accused Products; and (3) they do not sell directly to any subsidiaries, affiliates, or customers located in Texas. *Id*. at 9 (citing Liang Decl., ¶¶ 2-7). According to Defendants, Coretronic or an authorized entity manufactures the Accused Products in Asia and sells them to its customers, who take possession of the Accused Products in Asia, and it is those third-party customers (such as Optoma USA) who import the Accused Products into the United States and subsequently offer for sale and/or sell the Accused Products in the United States. *Id*. at 3, 9 (citing Liang Decl. ¶ 15); *see also id*. at 2 (stating non-party Optoma USA is the only affiliated entity responsible for the sale and offer for sales in, and the importation into, the United States of the Accused Products). Defendants assert Optoma USA and Defendants are "indisputably separate and distinct corporations." *Id.* at 4.

Maxell responds that the complaint sufficiently alleges how Defendants place the Accused Products in the stream of commerce, knowing that those products are destined for the United States and this District, thus bringing Defendants squarely within the due process limits of specific personal jurisdiction. Dkt. No. 41 at 1. Further, Maxell argues Defendants portray themselves and their subsidiaries as a "single company operating across national borders, sharing a global management team, and importing products into the United States." *Id.* at 10. Maxell argues Defendants' subsidiaries and sister companies operate as one entity (which Defendants' own corporate submissions refer to as "the Group"), and the "oneness is evident from the way Defendants present themselves to investors and the public, the way multiple individuals

simultaneously serve as officers/directors in as many as two dozen companies in 'the Group,' and the way Defendants engaged in prior negotiations with" Maxell. *Id.* at 1.

Viewing Maxell's allegations as true and resolving factual conflicts in Maxell's favor, the Court finds Maxell has made a *prima facie* showing of specific jurisdiction in this District.[3] *See Beverly Hills Fan*, 21 F.3d at 1565 ("The allegations are that defendants purposefully shipped the accused fan into Virginia through an established distribution channel. The cause of action for patent infringement is alleged to arise out of these activities. No more is usually required to establish specific jurisdiction."). Numerous cases in this District have reached the same result.

In *AX Wireless L.L.C. v. Lenovo Grp. Ltd.*, No. 2:22-CV-00280-RWS-RSP, 2023 WL 7105701 (E.D. Tex. Sept. 6, 2023), the court found the plaintiff made a *prima facie* showing of personal jurisdiction under a stream of commerce theory by acting in consort with its subsidiaries to deliver the Accused Products into the United States market, including Texas. *Id.* at *3-5 (Magistrate Judge Payne recommending denying the defendant's motion to dismiss because the plaintiff established a *prima facie* case under a stream of commerce theory); *see also AX Wireless*, No. 2:22-cv-280-RWS-RSP, Dkt. No. 119 at 6-10 (District Judge Schroeder adopting Judge Payne's recommendation). Judge Payne explained that a foreign company need not itself sell the accused goods in the forum if allegations or evidence support personal jurisdiction. *AX Wireless*, 2023 WL 7105701, *3 (citing *Nuance*, 626 F.3d at 1232–33 (holding an out-of-state corporate defendant purposefully availed itself of the forum state through an entity acting as its alter ego);

---

[3] "When the district court's determination of personal jurisdiction is based on affidavits and other written materials, and no jurisdictional hearing is conducted, the plaintiff usually bears only a prima facie burden." *Celgard, L.L.C. v. SK Innovation Co.*, 792 F.3d 1373, 1378 (Fed. Cir. 2015). "To make that showing, [the plaintiff] need only demonstrate facts that, if true, would support jurisdiction over the Defendants." *Campbell Pet Co. v. Miale*, 542 F.3d 879, 888 (Fed. Cir. 2008) (citation omitted). "Unless directly contravened, [the plaintiff's] version of the facts is taken as true, and conflicts between the facts contained in declarations submitted by the two sides must be resolved in [the plaintiff's] favor for purposes of deciding whether a prima facie case for personal jurisdiction exists." *Id.*

also citing *Celgard*, 792 F.3d at 1379 (recognizing agency and alter ego theories for personal jurisdiction, but holding plaintiff failed to provide any evidence supporting agency or alter ago theories)). In addition to presenting evidence indicating LGL was at the head of the "Lenovo Group," which manufactured, sold, and distributed the accused products in the United States, the plaintiff's complaint specifically identified locations for Best Buy and others within this District as authorized sellers of the accused products that LGL, through the Lenovo Group, placed into the stream of commerce. *Id.* at *4; *see also Cardsoft, Inc. v. Verifone Holdings, Inc.*, No. 2:08-CV-098 (TJW), 2009 WL 361069, at *1–2 (E.D. Tex. Feb. 10, 2009) (holding plaintiff presented a *prima facie* case of jurisdiction over a foreign company because of (1) overlapping executive and management teams with the domestic defendant, (2) revenues from sales of the accused products flowed to the foreign entity, and (3) the foreign company's website advertised and offered services for point of sale transactions).

Similarly, in *Orange Elec. Co. v. Autel Intelligent Tech. Corp.*, No. 2:21-CV-00240-JRG, 2022 WL 4368160 (E.D. Tex. Sept. 21, 2022), the court found personal jurisdiction over a foreign defendant under a stream of commerce theory because the foreign defendant specifically targeted the United States by selling products to a wholly-owned, non-party domestic subsidiary for distribution in the United States. *Id.* at *2-4. In that case, the named foreign defendant sold the accused products to its wholly-owned U.S. subsidiary located in New York, who then imported and sold the accused products to retailers in Texas, including Walmart, O'Reilly Auto Parts, Advanced Auto Parts, and ABC Auto Parts. *Id*. at *1, 3. The named defendant's website provided the location of retailers where the accused products were available for purchase "in the vicinity of Marshall, Texas[,] and surrounding areas." *Id*. at *3. The court held these allegations were "sufficient to qualify [defendant] as placing the Accused Products into the stream of commerce

with the expectation that such products will be purchased by consumers in Texas. Given that [defendant] is aware that the Accused Products will be sold in Texas, [defendant] can, therefore, reasonably anticipate that it will be subject to suit in Texas." *Id*.

In another recent case, on similar facts dealing with a parent and its subsidiaries under a stream of commerce theory, District Judge Gilstrap held that similar allegations were sufficient under the *prima facie* standard. *See Eireog*, 2024 WL 4519763. Judge Gilstrap relied specifically on the following allegations:

> Eireog's Amended Complaint alleges that LGL at least acts in concert with its wholly owned subsidiaries to deliver the accused products into the Texas market under a stream of commerce theory. Eireog alleges that LGL's distribution channel—comprising its wholly owned subsidiaries—is arranged in a way that LGL "knew, or reasonably could have foreseen, that a termination point of the channel" was Texas.

*Id.* at *4 (quoting *Beverly Hills Fan*, 21 F.3d at 1564).

Here, Maxell's allegations are substantially similar to those at issue in *AX Wireless*, *Orange*, and *Eireog*. Maxell's complaint sufficiently alleges that Defendants and their subsidiaries and sister companies act in concert as "the Group" to place the Accused Products in the stream of commerce, knowing that the products are destined for the United States, including Texas. Dkt. No. 1, ¶¶ 30-35, 80-81, 87-88, 95-109. The complaint also identifies specific locations for Best Buy and others within this District as authorized sellers of the Accused Products that Defendants, through "the Group," place into the stream of commerce. The complaint further alleges Defendants conduct business in the U.S. and Texas through websites which advertise the Accused Products for sale in the U.S. and Texas, link to the websites of their subsidiaries, sister companies, and retailers where the Accused Products are available for purchase, including in Texas, and allow U.S. customers to obtain technical support. *See id.*, ¶¶ 57, 78-82, 87-88, 96, 103, 106 & n. 16 (further alleging the "Dealer Locator" on Optoma's website provides the location of retailers where

the Accused Products are available for purchase, including in Texas). Maxell sufficiently alleges that Defendants at least act in concert with their subsidiaries and sister companies and use the multi-level corporate structure to place the Accused Products in the stream of commerce—resulting in the Accused Products being sold or offered for sale in Texas.

Defendants attempt to distinguish *Orange*, 2022 WL 4368160, by arguing that the website identified in Maxell's complaint (which identifies sellers of the Accused Products in Texas) is Optoma USA's website, not Defendants' website. Dkt. No. 48 at 2-3 (citing Dkt. No. 1, ¶ 103 & n. 16). The website's host is not dispositive, especially in light of Maxell's allegations that Coretronic treats all members of "the Group" as a single entity. *See* Dkt. No. 54 at 3. Optoma USA's parent knew or should have known the Accused Products are sold in Texas. *See AX Wireless*, 2023 WL 7105701, at *4 ("The Lenovo Group—including LGL and its subsidiaries, affiliates, or intermediaries—is the established distribution channel for the Accused Products throughout the United States, including Texas, which is one of the most populated states.… LGL could foresee that the Accused Products would be sold in Texas."). However, even if the Court were to agree with Defendants regarding the website issue, the Court would still find Maxell has made a *prima facie* showing of specific personal jurisdiction under a stream of commerce theory based on the remaining allegations. *See Universal Connectivity Techs. Inc. v. Lenovo Grp. Ltd.*, No. 2:23-CV-00449-JRG, 2024 WL 4519760, *3-5 (E.D. Tex. Oct. 17, 2024) (finding plaintiff made a *prima facie* showing of specific personal jurisdiction under a stream of commerce theory without requiring the plaintiff to show that defendant's website identified sellers of the accused products in Texas).

Defendants also argue they are not responsible for the actions of unrelated third parties. According to Defendants, Maxell points to the activities of "legally separate and unaffiliated,

nonparty entities" such as Best Buy and Amazon to generally claim that Defendants engage in and transact business in Texas. Dkt. No. 20 at 8. However, this is not a situation where Defendants merely sell their accused products to unrelated third-party distributors who then sell the accused products to Texas. Rather, as noted above, the allegations are sufficient to make a *prima facie* showing that the distribution channel formed by Defendants was intentionally established and that Defendants knew, or reasonably could have foreseen, that a termination point of the channel was Texas. *Ultravision Techs., L.L.C. v. Holophane Eur. Ltd.*, No. 2:19CV00291-JRG-RSP, 2020 WL 3493626, at *5 (E.D. Tex. Apr. 23, 2020), *report and recommendation adopted*, 2020 WL 3489443 (E.D. Tex. June 26, 2020) (citing *Beverly Hills Fan*, 21 F.3d at 1564).

Defendants further argue they are not responsible for the actions of their non-party affiliates. Defendants assert that Maxell's stream of commerce theory must fail because all sales of the Accused Products occur in Asia, and Defendants do not have insights into what happens thereafter. Dkt. No. 48 at 1-2. According to Defendants, Optoma USA, Coretronic's subsidiary charged with sales and distribution of the Accused Products in the United States, is the one who engages in the sale or offer for sale of the Accused Products in the United States. *Id.* at 1, 3. Defendants claim they "are indifferent as to the ultimate destination and certainly have no specific intention that the products be sold in the United States or Texas." *Id.* at 2. At least one court within this District has considered and rejected the same complaints Defendants raise here.

In *Universal Connectivity*, the defendant argued it was merely a holding company that did not place anything into the stream of commerce, that it did not control its subsidiaries' activities concerning the accused products, and that it did not direct any activities at Texas. 2024 WL 4519760, at *2, 4. After noting the defendant chose to use its "multi-level corporate structure to place the accused products into the stream of commerce—resulting in the accused products being

sold or offered for sale in Texas," *id.* at *4, the court held the plaintiff's claims for patent infringement arose from or related to the defendant's contacts with Texas. *Id.* As noted above, Maxell makes similar allegations here. *See* Dkt. No. 1, ¶¶ 30-35, 80-81, 87-88, 95-109. Defendants' claims that they do not engage in any U.S. activities are directed toward factual disputes in the complaint which cannot be resolved at this stage of the proceedings. *See Orange*, 2022 WL 4368160, at *6.

Defendants next argue that Maxell's allegations regarding Defendants' affiliates and subsidiaries "are just conclusions with no factual support." Dkt. No. 20 at 8. According to Defendants, none of Maxell's allegations provide sufficient support for Maxell's broad "claims that Defendants have directed activities to customers in the State of Texas and this District, solicited business in the State of Texas and this District, transacted business within the State of Texas and this District, and attempted to derive financial benefit from residents of the State of Texas and this District." *Id.* at 7. However, the complaint contains <u>specific</u> allegations and evidence demonstrating how Defendants, with their subsidiaries, sister companies, affiliates, and partners, operate together to sell and distribute the Accused Products in the United States. Dkt. No. 41 at 9 (citing Dkt. No. 1, ¶¶ 30-35, 95-109; Compl., Ex. A (Coretronic – Shipments to U.S.); Compl., Ex. B (Optoma – Shipments to U.S.); Compl., Exs. C and D (Sample Bills of Lading)). Viewing the allegations in the complaint in the light most favorable to Maxell, Maxell has provided sufficient factual support and not mere conclusions.

Defendants argue that Maxell cannot impute their affiliates' actions to Defendants because the affiliates are not alter egos. *See* Dkt. No. 20 at 9. Because the Court finds personal jurisdiction under the stream of commerce theory proper, the Court does not need to decide whether Maxell's alter ego and agency theories, standing alone, are sufficient to establish specific jurisdiction. *See*

*Eireog*, 2024 WL 4519763, at *5, n. 4 ("Because the Court finds personal jurisdiction under the stream of commerce theory proper, the Court need not address Eireog's other theories".).

Nevertheless, the Court notes there are specific, well-pleaded allegations in the complaint regarding those theories which might, if analyzed, create "open factual disputes as to whether [Defendants] created, control[], or direct[] [their] subsidiaries to place the allegedly infringing products into the stream of commerce in Texas." *Id.* at *4; *see also Universal Connectivity*, 2024 WL 4519760, at *4. The complaint references evidence—including annual reports, financial reports and statements, website links, and other public-facing materials allegedly prepared by Defendants—to show that Defendants and their subsidiaries and sister corporations (which Defendants call "the Group") act as one entity under the direction of Coretronic.[4] Dkt. No. 1, ¶¶ 31-34, 37, 40-92, 96.

Finally, Defendants rely on a declaration to detach from their subsidiaries. According to Ms. Liang, "Defendants and Optoma USA, as well as Defendants and other related entities, observe corporate formalities, have separate business departments, and have separate daily operations." Liang Decl., ¶ 14. Ms. Liang further attests as follows:

> The products Plaintiff accused of infringing the asserted patents are all manufactured by or under the authority of Coretronic Corporation in Asia. None of the Accused Products or components thereof are manufactured by Coretronic in the United States. After manufacture, the Accused Products are sold to Coretronic's

---

[4] Maxell's complaint alleges Defendants portray themselves and their subsidiaries as "the Group"—a single global company. Dkt. No. 1, ¶¶ 43-48 (alleging Coretronic's 2023 Financial Report refers to Defendants and their various affiliates as "the Group" over two hundred times and indicates members of "the Group" share assets), 54 (alleging "Coretronic tracks the Group's worldwide sales. . . ."), 75-78 (alleging Optoma directs and controls the projector business of the Optoma "Group," which is responsible for the making, importing, offering to sell, selling, and/or using of the Accused Products in the U.S., including in the State of Texas generally and this District specifically). Maxell further alleges Defendants share executives and management teams with other subsidiaries and/or sister companies to manufacture and distribute Accused Products in the United States. *Id.*, ¶¶ 58-70, 62, 83-86. Additionally, Maxell alleges Defendants enjoy revenue from sales of the Accused Products by related entities (*id.*, ¶¶ 42-43, 54) and engage in licensing negotiations involving U.S. patents on behalf of their subsidiaries and/or sister companies (*id.*, ¶¶ 49-52. According to Maxell, during negotiations, despite sending a notice of infringement to Optoma (and not Coretronic), the only individuals who engaged with Maxell and its counsel were employees/officers of Coretronic (*id.*, ¶¶ 49-51), and Coretronic's general counsel (Ms. Liang) expressly states via e-mail that she was acting on behalf of Coretronic's subsidiaries (*id.*, ¶ 52).

customers, whether those customers are affiliated or third-party entities. Those customers take possession of the Accused Products at ports in Taiwan or China. Those customers then import the Accused Products into the United States (if bound for the United States) and subsequently offer those products for sale and/or sell those products in the United States. Coretronic does not sell, offer to sell, or use the Accused Products in the United States or import the Accused Products into the United States. Coretronic is not actively involved in the distribution, sale, offer for sale, and/or importation of the Accused Products in or into the United States and does not have insights into those activities which are performed by its customers such as Optoma USA.

*Id.*, ¶ 15.

To the extent the Liang Declaration conflicts with Maxell's well-pleaded allegations in the complaint, the Court must view the well-pleaded allegations in the light most favorable to Maxell. *Eireog*, 2024 WL 4519763, at *4; *see also Am. Pats. L.L.C. v. D-Link Corp.*, No. 4:19-CV-764, 2020 WL 3972740, at *4 (E.D. Tex. July 14, 2020) (noting the parties' dispute about D-Link's "precise role" in the distribution chain that ended in sales of the accused products in the U.S. and in Texas and finding for purposes of whether a *prima facie* case existed that "D-Link Corp. at the very least ha[d] some level of control over the accused products' placement into the stream of commerce that end[ed] in sales in the United States and in Texas"). Maxell's complaint specifically alleges that each "Defendant has, directly or through its distribution network, purposefully and voluntarily placed Accused Products in the stream of commerce, knowing and expecting them to be purchased and used by consumers in the United States, including in this District." Dkt. No. 1, ¶ 108. Courts within this district have found specific jurisdiction under a stream of commerce theory based on similar allegations. *Eireog*, 2024 WL 4519763, at *4.

The complaint's well-pleaded allegations sufficiently allege Defendants, acting with their subsidiaries, sister companies, affiliates, and partners, deliver the Accused Products into the Texas market under a stream of commerce theory with the expectation that such products will be purchased by consumers in Texas. *Id.*; *see also Orange*, 2022 WL 4368160, *3.

**b. Maxell's claims arise from or relate to Defendants' Texas contacts.**

Maxell's infringement claims arise from Defendants' making, using, offering for sale, selling, or importing the Accused Products into the United States. Maxell alleges Defendants directly or indirectly place the Accused Products into the stream of commerce throughout the U.S., including Texas. Accordingly, Maxell's claims for patent infringement arise from or relate to Defendants' contacts with Texas. *See Universal Connectivity*, 2024 WL 4519760, *4 (similar); *see also Orange*, 2022 WL 4368160, *4.

**c. The exercise of personal jurisdiction is reasonable and fair.**

In their motion, Defendants argue it would be unfair and unreasonable to expect them to litigate this dispute in the Eastern District of Texas because this District is not a convenient forum. Dkt. No. 48 at 3-4.

To evaluate whether the exercise of personal jurisdiction is reasonable and fair, the court weighs five factors: (1) the burden on the defendant; (2) the interests of the forum State; (3) the plaintiff's interest in obtaining relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several States in furthering substantive social policies. *Universal Connectivity*, 2024 WL 4519760, *5 (citing *Patent Rts. Prot. Grp., L.L.C. v. Video Gaming Techs., Inc.*, 603 F.3d 1364, 1369 (Fed. Cir. 2010) (citing *Burger King*, 471 U.S. at 476-77)). "When a defendant seeks to rely on the 'fair play and substantial justice' factor to avoid the exercise of jurisdiction by a court that otherwise would have personal jurisdiction over the defendant, 'he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable.'" *Id.* (quoting *Nuance*, 626 F.3d at 1231 (citing *Burger King*, 471 U.S. at 477)).

Defendants' primary argument concerns the first factor, burden on the defendant. Defendants contend that the exercise of personal jurisdiction would be unreasonable because no relevant witnesses or documents are located in Texas. Dkt. No. 20 at 9-10.[5] However, Defendants have not made any demonstration that it would be unreasonable to litigate in this Court. While Defendants may be slightly burdened by defending in a foreign forum, "progress in communications and transportation has made the defense of a lawsuit in a foreign tribunal less burdensome." *Eireog*, 2024 WL 4519763, at *5 (quoting *Synthes*, 563 F.3d at 1299 (citing *World-Wide Volkswagen*, 444 U.S. at 294)).

The second, third, and fourth factors further favor jurisdiction because both Texas and the United States have an interest in enforcing federal patent laws and providing Maxell a forum to efficiently pursue its claims for patent infringement and for the parties to efficiently resolve their disputes. *Id.* (citing *Synthes*, 563 F.3d at 1299 ("The United States also has an interest in discouraging injuries that occur within its boundaries, including injuries resulting from patent infringement.")). Although Defendants fault Maxell for pointing to only TI and a Maxell affiliate as the only relevant third parties located in Texas, Maxell claims its employees regularly visit this District to conduct business at its affiliate's office, making this District "a convenient forum for Maxell witnesses and the location of third-party discovery from TI." Dkt. No. 54 at 4.

As to the fifth factor, the United States and Texas have an interest in furthering their social policies to discourage patent infringement. *Eireog*, 2024 WL 4519763, at *5. Accordingly, the

---

[5] Defendants argue the Northern District of California, where several of Optoma USA's employees or former employees reside, is clearly a more convenient forum than this District. Dkt. No. 20 at 10. Defendants state in a footnote that they were separately filing, pursuant to 28 U.S.C. § 1404, a motion to transfer this action to the Northern District of California, describing in more detail therein why the Northern District of California is a clearly more convenient forum that the Eastern District of Texas. *Id.* at 10, n. 1. On March 26, 2025, the Court denied Defendants' motion to transfer [63] under § 1404(a). Dkt. No. 85.

Court finds that the exercise of personal jurisdiction over Defendants is both reasonable and fair. *Id.*; *Universal Connectivity*, 2024 WL 4519760, *5.

In conclusion, Maxell, through the allegations in its complaint, made a *prima facie* showing that Defendants purposefully directed activities at residents of this forum and that the claims arise out of or relate to Defendants' activities with the forum. Shifting the burden, Defendants did not show that this is one of the rare cases where the plaintiff's interest and the state's interest in adjudicating the dispute in the forum are so attenuated that they are clearly outweighed by the burden of subjecting Defendants to litigation within the forum. *Seven Networks, L.L.C. v. ZTE (USA), Inc.*, No. 3:17-CV-1495-M, 2018 WL 2427147, at *4 (N.D. Tex. May 30, 2018).

## C. Personal jurisdiction exists under Rule 4(k)(2)

Alternatively, the Court has personal jurisdiction over Defendants pursuant to Rule 4(k)(2).

## 1. Applicable law

Personal jurisdiction may exist under Federal Rule of Civil Procedure 4(k)(2) where "(A) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and (B) exercising jurisdiction is consistent with the United States Constitution and laws." *Eireog*, 2024 WL 4519763, at *2 (quoting FED. R. CIV. P. 4(k)(2)). Rule 4(k)(2) was adopted in response to the "gap" in federal courts' jurisdiction—a defendant may have sufficient contacts with the United States as a whole to satisfy due process concerns, but if it had insufficient contacts with any single state, it would "not be amenable to service by a federal court sitting in that state." *Williams v. Licari*, 692 F. Supp. 3d 647, 659 (E.D. Tex. 2023) (citing *World Tanker Carriers Corp. v. M/V Ya Mawlaya*, 99 F.3d 717, 721 (5th Cir. 1996)); *see also Touchcom, Inc. v. Bereskin & Parr*, 574 F.3d 1403, 1414 (Fed. Cir. 2009) ("Rule 4(k)(2) closed a loophole that existed prior to the 1993 amendments of the Federal Rules of Civil Procedure."). A court may exercise jurisdiction under

Rule 4(k)(2) if "(1) the plaintiff's claim arises under federal law, (2) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction, and (3) the exercise of jurisdiction comports with due process." *Eireog*, 2024 WL 4519763, at *2 (quoting *M-I Drilling Fluids UK Ltd. v. Dynamic Air Ltda.*, 890 F.3d 995, 999 (Fed. Cir. 2018) (quoting *Synthes (U.S.A.) v. G.M. Dos Reis Jr. Ind. Come de Equip. Medico,* 563 F.3d 1285, 1293-94 (Fed. Cir. 2009))).

**2.      Analysis**

**a.   Maxell's patent infringement claims arise under federal law.**

The first prong of Rule 4(k)(2) requires that the claim against the defendant arises under federal law. *Universal Connectivity*, 2024 WL 4519760, *5 (citing *Synthes*, 563 F.3d at 1290). Federal patent law governs Maxell's patent infringement allegations. 28 U.S.C. § 1338; *Synthes*, 563 F.3d at 1296 ("The claim of patent infringement presents a federal question"), therefore, the first prong of Rule 4(k)(2) is satisfied.

**b.   Defendants contend they are not subject to personal jurisdiction in any United States forum.**

The second prong of Rule 4(k)(2) requires that the defendant is not subject to the personal jurisdiction of any state court of general jurisdiction. *Universal Connectivity*, 2024 WL 4519760, at *6 (citing *Synthes*, 563 F.3d at 1290). If the defendant "contends that he cannot be sued in the forum state and refuses to identify any other where suit is possible, then the federal court is entitled to use Rule 4(k)(2)." *Id.* (quoting *Merial, Ltd. v. Cipla, Ltd.*, 681 F.3d 1283, 1294 (Fed. Cir. 2012)). Here, Defendants contend they cannot be sued in Texas, Dkt. No. 20 at 1-2, and do not name any other state where the suit could proceed. *See generally id.*; *see also* Dkt. No. 48 at 5 (stating in reply that "Defendants' brief and declaration make clear that Defendants do not have minimum contacts with the United States as a whole as required to satisfy the due process requirements"). Therefore, the second prong of Rule 4(k)(2) is satisfied.

### c. The exercise of personal jurisdiction comports with due process.

The third prong of Rule 4(k)(2) requires that the court's exercise of personal jurisdiction comports with due process. *Universal Connectivity*, 2024 WL 4519760, at *6 (citing *Synthes*, 563 F.3d at 1290). This analysis "contemplates a defendant's contacts with the ***entire United States***, as opposed to the state in which the district court sits." *Id.* (quoting *Synthes*, 563 F.3d at 1295 (emphasis added in *Universal Connectivity*)). To determine whether a defendant has minimum contacts, the court considers whether "(1) the defendant purposefully directed its activities at residents of the forum; (2) the claim arises out of or relates to the defendant's activities with the forum; and (3) assertion of personal jurisdiction is reasonable and fair." *Id.* (quoting *M-I Drilling*, 890 F.3d at 1000). Thus, Rule 4(k)(2) serves as a federal long-arm statute. *Id.* (citing *Synthes*, 563 F.3d at 1296).

While Defendant's opening briefing does not expressly address Rule 4(k)(2), in their reply, Defendants state they are relying on the same arguments that they do not have minimum contacts with Texas to show they do not have minimum contacts with the United States as a whole. Dkt. No. 48 at 5. ("Defendants' brief and declaration make clear that Defendants do not have minimum contacts with the United States as a whole as required to satisfy the due process requirements.").

As explained above, Maxell specifically alleges Defendants sell the Accused Products to subsidiaries and affiliates in the United States who then resell the Accused Products in the United States, including Texas. The Court has already concluded that it has personal jurisdiction over Defendants based on their contacts with Texas. That finding would be more readily supported when considering Defendants' contacts with the United States as a whole. As in *University Connectivity*, the Court also finds that it has personal jurisdiction over Defendants based on their contacts directed to the United States at large. 2024 WL 4519760 at *6. Defendants have sufficient

minimum contacts with the United States under the stream of commerce theory, and the Court's assertion of personal jurisdiction over Defendants is reasonable and fair. *See* **Section II.B.2.c.**

Accordingly, in the alternative, the Court finds that it has personal jurisdiction over Defendants under Federal Rule of Civil Procedure 4(k)(2). The undersigned recommends the Court deny Defendants' motion to dismiss under Rule 12(b)(2).

### III. RULE 12(b)(7) MOTION TO DISMISS

#### A. Analysis

Defendants argue Optoma USA is a necessary and indispensable party that must be joined, but that Optoma USA is not subject to venue in this District, so the case must be dismissed pursuant to Rule 12(b)(7). While Maxell does not dispute that Optoma USA is not subject to venue in this District, Maxell contends that Optoma USA is not a necessary and indispensable party.

"[A] Rule 12(b)(7) analysis entails two inquiries under Rule 19." *Arigna*, 697 F. Supp. 3d at 642 (quoting *H.S. Res., Inc. v. Wingate*, 327 F.3d 432, 439 (5th Cir. 2003)). First, the Court must determine under Rule 19(a) whether a person should be joined to the lawsuit. *Id.* "If joinder is warranted, then the person will be brought into the lawsuit." *Id.* (quoting *Wingate*, 327 F.3d at 439). But if such joinder would destroy the court's jurisdiction, then the court turns to Rule 19(b) and determines "whether to press forward without the person or to dismiss the litigation" based on a number of factors. *Wingate*, 327 F.3d at 439.

Here, Rule 19(b) need not be considered because Defendants fail to show the first, "Required Party," inquiry of a Rule 19 analysis. To qualify as a "required party" under the Rule 19(a), the party's absence must mean "the court cannot accord complete relief among [the] existing parties," must "impair or impede the person's ability to protect the interest," or must "leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent

22

obligations because of the interest." FED. R. CIV. P. 19(a)(1). As explained below, none of these conditions are met and, therefore, joinder is not necessary.

## 1.    The Court can afford complete relief without Optoma USA.

As Maxell correctly argues, courts frequently adjudicate claims of infringement (both direct and indirect) without requiring the presence of any other parties who may infringe using these same products. Dkt. No. 41 at 19. This frequent occurrence does not result in a court's inability to "accord complete relief among existing parties." FED. R. CIV. P. 19(a)(1)(A). "[I]t is well-established that Rule 19 does not require the joinder of joint tortfeasors." *Nottingham v. Gen. Am. Commc'ns Corp.*, 811 F.2d 873, 880 (5th Cir. 1987); *see also Akoloutheo, L.L.C. v. Sys. Soft Techs., Inc*., No. 4:20-CV-985, 2021 WL 1947343, at *2 (E.D. Tex. May 14, 2021) (applying Rule 19 in the context of patent infringement involving multiple tortfeasors). The court in *Akoloutheo* noted the named defendant could be liable for selling, offering to sell, making, or using the infringing instrumentality, regardless of a subsidiary's downstream role, and could also be liable for inducing infringement or contributorily infringing. *Akoloutheo* 2021 WL 1947343, at *2. The court held that a U.S. subsidiary was not a necessary party and noted the court "may still provide complete relief between the existing parties to this suit." *Id.*

Similarly here, Maxell seeks to hold Defendants accountable for their own actions, which allegedly occur both directly and through subsidiaries like Optoma USA, among others. *See* Dkt. No. 1, ¶¶ 90-92. The complaint's infringement allegations are directed to the actions of Defendants themselves and are not expressly predicated on the further infringing acts of Optoma USA or any other U.S. subsidiaries or brand customers. *See* Dkt. No. 1, ¶¶ 33-34, 37, 40-92, 96. Maxell has also properly alleged induced and contributory infringement as explained in Section IV.B.2 below.

Thus, the Court finds it can accord complete relief among the existing parties with Optoma USA absent from the case.

Defendants identify *Jaffer v. Standard Chartered Bank*, 301 F.R.D. 256 (N.D. Tex. 2014) for the proposition that unnamed corporate entities that are "primary participants" in the alleged infringement must be joined in litigation as necessary parties. Dkt. No. 20 at 10. Defendants assert Optoma USA is a "primary participant" in the alleged infringement here because Maxell's claims of infringement relate to products that are (1) manufactured by Coretronic in Asia; (2) sold to Coretronic's customers, including Optoma USA, who take possession of the Accused Products in Asia; and (3) then imported into, and marketed, distributed, offered for sale, and sold in, the United States by Optoma USA and Coretronic's other customers, "without any involvement by Defendants." *Id.* at 10-11. According to Defendants, Maxell is unable to articulate claims against Defendants without referring to, or invoking, the acts of Optoma USA. *Id.* at 11.

Defendants' reliance on *Jaffer* is misplaced. That case concerned an allegedly breached investment contract and access to funds in an account with Standard Chartered Bank Ghana ("Standard Ghana"). *Jaffer*, 301 F.R.D. at 258. The defendant Standard Chartered Bank ("Standard") moved to dismiss, arguing Standard Ghana was an independent corporation and an indispensable party to the case under Rule 19(b) over which the court could not gain personal jurisdiction. *Id.* The court noted that subsidiaries that are the "primary participants in the events giving rise to litigation are considered necessary parties that are required to be joined in that litigation." *Id.* at 260-61 (citing *Freeman v. Northwest Acceptance Corporation*, 754 F.2d 553, 559 (5th Cir.1985)). Notably, the court stated that "parties to a contract are generally considered necessary to litigation concerning that contract." *Id.* at 261 (citation omitted). Considering the evidence produced in that case, the court concluded that Standard Ghana was a necessary party

"as it constitute[d] both a primary actor in the events giving rise to this litigation and a central contracting party." *Id.*

This case does not involve a "central contracting party" which constitutes a primary actor in the events giving rise to this litigation. First, Optoma USA is not a contracting party with Maxell. Second, Maxell's infringement theories do not hinge on Optoma USA as the primary actor. The complaint's infringement allegations—which include manufacturing, making, using, offering for sale, selling, and importing—are attributed to Defendants through their active control and management of their complex network of seventy-nine subsidiaries and sister companies. Dkt. No. 41 at 18-19 (citing Dkt. No. 1, ¶ 47). As one example, the act of importing an accused product by Optoma USA may be an infringing activity, but that will not be the focal point of the lawsuit, (it likely will not even be disputed), especially if it was done at the direction of Defendants. However, *Coretronic's* actions of designing and manufacturing the products in a way that contains features which may fall within the scope of the claims *will* be a focus of the lawsuit.

Finally, Defendants claim that Optoma USA plays a role in the sale and marketing of the Accused Products in the United States. Dkt. No. 20 at 11; Liang Decl., ¶ 15. However, this does not make Optoma USA a necessary party to this litigation. *See In re Taasera Licensing*, Nos. 2:22-MD-03042-JRG and 2:22-CV-00303-JRG, 2023 WL 2716548, at *4 (E.D. Tex. Mar. 29, 2023) ("Although [the U.S. subsidiary] contends that it is a necessary party to the EDTX Action because it controls all U.S. sales of the [accused] products…, mere sales by themselves does not make [the U.S. subsidiary] a necessary party…[the U.S. subsidiary] is neither desirable nor necessary when its upstream parent company…that makes the accused products is already a named party in the EDTX Action")).

For these reasons, joinder is not necessary to render complete relief. *Rsch. Found. for State Univ. of New York*, 2025 WL 923437, at *6 ("It is well-settled that joint tortfeasors are not considered 'required' or indispensable parties under Rule 19."); *Stingray IP Sols., L.L.C. v. Signify N.V.*, No. 2:21-CV-00044-JRG, 2021 WL 9095764, at *6 (E.D. Tex. Oct. 25, 2021) (rejecting argument that subsidiary involved in allegedly infringing acts was required under Rule 19 and finding the court could "accord complete relief among existing parties"); *Akoloutheo*, 2021 WL 1947343, at *2 (similar).

2. **Disposing of this action in Optoma USA's absence will not impair Optoma USA's ability to protect its interest or subject existing parties to a substantial risk of inconsistent obligations.**

Defendants assert a finding of infringement in this case would necessarily prejudice Optoma USA because Optoma USA imports, distributes, offers to sell, and sells the Accused Products. Dkt. No. 20 at 11 (stating Maxell "is specifically requesting an injunction that would preclude the very activity in which Optoma USA is engaged"). According to Defendants, although Coretronic is the ultimate parent company of Optoma USA, it has no active involvement in or insights into the activities performed by its customers such as Optoma USA, and thus is not in a position to best protect Optoma USA's interests. *Id.* at 11-12. These arguments are unpersuasive.

Defendants provide no explanation for why Optoma USA's interests would not be adequately represented by its parent company's (Coretronic) participation in this suit. Both entities seek the same goal. And, as noted by Maxell in its surreply, Optoma USA, using the same counsel as Defendants here, filed a declaratory judgment action against Maxell involving several of the Asserted Patents. Dkt. No. 54 at 6. According to Maxell, certain statements in the complaint evidence "that Defendants are (at least) sharing case materials with Optoma USA and (very likely) working closely with Optoma USA regarding their dispute with Maxell." *Id.* at 6-7.

Defendants have not made any assertion that Optoma USA possesses unique or critical evidence that will not be accessible to at least its parent, Coretronic. According to Maxell, Defendants had no difficulty in obtaining detailed technical and sales information for projectors allegedly sold in the U.S. more than a decade ago, information which was offered by a Coretronic employee in support of Defendants' motions to dismiss Counts 6 and 7 of the complaint. Dkt. No. 41 at 2 & n.1 (citing Dkt. No. 22-2 (Declaration of Jia-Lin (Justin) Chen); Dkt. 24-2 (same)).

The interests of these two entities align, and Coretronic will be able to protect the interests of Optoma USA in this case. *See NorthStar Sys. L.L.C. v. Volkswagen AG*, No. 2:22-CV-00486-JRG, 2023 WL 5723648, at *4 (E.D. Tex. Sept. 5, 2023) ("BMW NA is a wholly-owned subsidiary of BMW, so the interests of these two entities align. In other words, BMW will adequately protect the interests of BMW NA."); *Arigna*, 697 F. Supp. 3d at 652-53 (stating "BMW NA is not a necessary or indispensable party, and the Court may proceed without BMW NA.").

Additionally, there is also no indication that Optoma USA would be subjected to inconsistent obligations in the absence of joinder. *Akoloutheo*, 2021 WL 1947343, at *2. As Maxell concedes, it will not be able to pursue a second case against Optoma USA involving these same patents and products. DKT. NO. 41 AT 21-22.

For these reasons, Optoma USA is not a necessary party, and the Court need not weigh the Rule 19(b) factors for determining whether a necessary party is an indispensable party whose absence requires dismissal of the suit. *See United States v. Donovan*, No. 4:19-cv-00761, 2020 WL 1677388, at *3 (E.D. Tex. Apr. 6, 2020) ("If joinder is not necessary under the threshold requirements of Rule 19(a), then no inquiry under Rule 19(b) is necessary."). Accordingly, the undersigned recommends that Defendants' Rule 12(b)(7) motion to dismiss be denied.

# IV. RULE 12(b)(6) MOTION TO DISMISS

## A.    Applicable legal standards

A party may move to dismiss an action for a "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). To survive dismissal at the pleading stage, a complaint must state enough facts such that the claim to relief is plausible on its face. *Arigna*, 697 F. Supp. 3d at 641 (citations omitted). A complaint states a sufficient claim if it gives the defendant "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (ellipsis in original) (citation omitted). When considering a Rule 12 motion to dismiss, a court assumes "all well-pleaded facts as true and view[s] those facts in the light most favorable to the plaintiff." *Bowlby v. City of Aberdeen, Miss*., 681 F.3d 215, 219 (5th Cir. 2012) (citation omitted).

In the context of patent infringement, a complaint must place the alleged infringer on notice of what activity is being accused of infringement. *Arigna*, 697 F. Supp. 3d at 642 (citing *Lifetime Indus., Inc. v. Trim-Lok, Inc.*, 869 F.3d 1372, 1379 (Fed. Cir. 2017)). However, the plaintiff is not required to prove its case at the pleading stage. *Id.*

## B.    Analysis

### 1.    Direct infringement

Defendants argue Maxell's complaint "fails to contain sufficient factual allegations to support the assertion that either named defendant committed an act of infringement under 35 U.S.C. § 271(a)." Dkt. No. 20 at 17. According to Defendants, they are physically located in Taiwan and do not sell or offer to sell in the United States or import any product into the United States. *Id.* at 18. Relying on the declaration of Ms. Liang, Defendants assert "title to the Accused Products passes to the purchaser, such as Optoma USA, in China or Taiwan and it is <u>that purchaser</u>

who then imports those Accused Products into the United States, not one of the named defendants." *Id.* (emphasis in original) (citing Liang Decl., ¶ 15).

To survive this Rule 12(b)(6) motion to dismiss, Maxell needs only place Defendants on notice of what activity is being accused of infringement, not prove its case. *Lifetime Indus., Inc. v. Trim-Lok, Inc*., 869 F.3d 1372, 1379 (Fed. Cir. 2017). Maxell's complaint meets that requirement.

The complaint pleads sufficient facts showing that Defendants' sale and offers to sell the Accused Products to their customers constitute direct infringement. For example, the complaint alleges that "Defendants offer to sell and/or sell the Accused Products in the United States directly to their subsidiaries, sister companies, affiliates, and/or partners (*e.g*., Samsung Electronics America, Inc., Coretronic Projection (Kunshan) Corp., Ricoh USA, Inc., and Nureva Inc. c/o Dhl Global Forwardi)." Dkt. No. 1, ¶ 30. The complaint further alleges that "Defendants have directly infringed one or more claims of the [Asserted Patents] in this District and elsewhere in Texas, including at least claim 1, literally and/or under the doctrine of equivalents, by or through making, using, importing, offering for sale, and/or selling their ultra short throw projectors." *Id*., ¶ 134; *see also id*., ¶¶ 168, 212, 252, 292, 348, 395 (similar allegations for remaining patents).

Defendants do not claim that they have insufficient notice of the allegations against them; rather, Defendants contend that it is non-party Optoma USA, not Defendants, who is responsible for the allegedly infringing activity. *See* Dkt. No. 48 at 5-6 (stating "there appears to be no dispute that the Defendants do not make or use the accused products in the United States so the only possible grounds for alleged infringement are the offer for sale, sale, or importation into the United States of the accused products. Optoma USA is the entity engaging in those activities. In fact, Plaintiff's basis for alleged jurisdiction in Texas is through the purported activities of Defendants' subsidiary's (i.e., Optoma USA's) sales into the stream of commerce in the United States.

Moreover, Plaintiff knows the importance of Optoma USA and the fact that it is the primary participant in the alleged infringement.").

As urged by Maxell, Defendants' arguments are directed toward factual disputes with the complaint, including the merits of Maxell's theories of the location of sale by Defendants,[6] and alter ego and agency theories of direct infringement. However, this is not the time to rule on those arguments. *See Orange,* 2022 WL 4368160, at *6 ("[Defendants'] arguments are directed toward factual disputes with the Complaint, which cannot be resolved at this stage of the proceedings."); *Stingray IP Sols., LLC v. Signify N.V.*, No. 2:21-CV-00044-JRG, 2021 WL 9095764, at *6 (E.D. Tex. Oct. 25, 2021) (stating, the context of a Rule 19 dispute, "[a]t the motion to dismiss stage, the Court must resolve controverted factual allegations in favor of Stingray, rather than merely accept Signify's argument that the defendants commit no infringing acts in the U.S."); *Liberty Access*, Cause No. 2:22-cv-00507-JRG, Dkt. No. 61 at 17-18 (E.D. Tex. Aug. 25, 2023) (holding similar in the context of a 12(b)(6) dispute).

Accepting the complaint's well-pled allegations as true, Maxell has pleaded enough facts to state a claim for direct infringement. That Defendants themselves may not have a physical presence in the U.S. is immaterial. *See Nuance*, 626 F.3d 1222, 1233 (Fed. Cir. 2010) (recognizing

---

[6] Maxell argues the location of the passing of title is not dispositive to the location of a sale for purposes of direct infringement. Dkt. No. 41 at 23-24 (citing *Litecubes, L.L.C. v. Northern Light Products, Inc.,* 523 F.3d 1353, 1369 (Fed. Cir. 2008) ("GlowProducts bases its argument that these were not sales in the United States on the grounds that the products were shipped f.o.b., and thus title over the goods were transferred while the goods were still in Canada. Our case law, however, is inconsistent with such a theory, and we conclude that there is substantial evidence of a sale within the United States for the purposes of § 271"); *SEB S.A. v. Montgomery Ward & Co.,* 594 F.3d 1360, 1375 (Fed. Cir. 2010) (factors beyond passing of title relevant to determining the location of sale for purposes of direct infringement). As held in *Semcon*, drawing reasonable inferences in Maxell's favor, "it does not appear that there is an insurmountable bar to relief." *Semcon*, 2019 WL 1979930, at *3.

that a foreign corporation need not have a physical presence in the U.S. for importation under § 271(a)).[7]

In addition, Maxell's agency and alter ego allegations (Dkt. No. 1, ¶¶ 31-34, 37, 40-92, 96) provide "subsidiary factual support" for the proposition that the subsidiaries' actions are attributable to Defendants. *Arigna*, 697 F. Supp. 3d at 649. The complaint provides Defendants with proper and fair notice of the accused infringing activity and the factual basis for Maxell's alter ago and agency theories of liability at the pleadings stage, and Defendants' claims to the contrary should be rejected. *See id.* at 649-50 ("The precise degree of control that BMW exerts over its subsidiary BMW NA, and whether such control is sufficient to prove that BMW NA's actions are in fact attributable to BMW, is a fact-specific inquiry that Arigna need not prove at this stage. The Court, accepting the well-pled allegations as true, finds that Arigna has pled enough to state a claim for infringement based on BMW's control of its subsidiaries."); *see also Orange,* 2022 WL 4368160, at *6 (denying motion to dismiss and holding that plaintiff articulated the standard for patent infringement and provided defendant with proper notice).

The undersigned recommends Defendants' Rule 12(b)(6) motion be denied as to Maxell's direct infringement claims.

---

[7] Defendants are not helped by Ms. Liang's declaration because it is improper for the Court to consider controverted evidence under Rule 12(b)(6). *Rsch. Found. for State Univ. of New York v. Xiaomi Corp.*, No. 2:23-CV-00353-RWS-RSP, 2025 WL 923437, at *5 (E.D. Tex. Mar. 4, 2025), *report and recommendation adopted sub nom.*, No. 2:23-CV-353-RWS-RSP, 2025 WL 918437 (E.D. Tex. Mar. 26, 2025); *see also Semcon IP Inc. v. Kyocera Corp.*, No. 2:18-cv-00197-JRG, 2019 WL 1979930, at *2-3 (E.D. Tex. May 3, 2019) (stating the court "need not accept Kyocera's legal conclusion that Kyocera's sale of or offers to sell smartphones to Kyocera International are not U.S. sales or offers to sell," particularly because this "is necessarily a highly factual inquiry").

## 2. Indirect Infringement

### a. Induced Infringement

Defendants also assert Maxell's induced infringement claims should be dismissed because Maxell fails to set forth specific facts regarding the requisite knowledge and intent factors of inducement. Dkt. No. 20 at 19.

"Whoever actively induces infringement of a patent shall be liable as an infringer." 35 U.S.C. § 271(b). "[L]iability for inducing infringement attaches only if the defendant knew of the patent and that 'the induced acts constitute patent infringement.'" *Commil USA, L.L.C. v. Cisco Sys., Inc*., 575 U.S. 632, 639 (2015) (quoting *Global–Tech Appliances, Inc. v. SEB S.A*., 563 U.S. 754, 766 (2011)). The specific intent requirement for "[i]nducement can be found where there is [e]vidence of active steps taken to encourage direct infringement." *Barry v. Medtronic, Inc*., 914 F.3d 1310, 1334 (Fed. Cir. 2019) (quoting *Vanda Pharm. Inc. v. West-Ward Pharm. Int'l Ltd*., 887 F.3d 1117, 1129 (Fed. Cir. 2018)). Such "'active steps' can include 'advertising an infringing use,' 'instructing how to engage in an infringing use,' and assisting in performing an infringing use." *Motiva Pats., L.L.C. v. Sony Corp*., 408 F. Supp. 3d 819, 828 (E.D. Tex. 2019) (quoting *Barry*, 914 F.3d at 1334).

Maxell's complaint sufficiently pleads Defendants' requisite knowledge of the Asserted Patents and their infringement thereof. *See* Dkt. No. 1, ¶¶ 36, 111-29, 159, 203, 243, 283, 339, 386, 433. Defendants do not appear to challenge or dispute that the complaint is sufficient as to Defendants' pre-suit knowledge of the Asserted Patents and of the infringement thereof. *See* Dkt. No. 20 at 18 ("Apart from allegations regarding Defendants' purported knowledge of the Asserted Patents. . ."). Instead, Defendants argue the complaint has not sufficiently alleged that Defendants

specifically intended for another party to infringe the Asserted Patents. *Id.* at 18-19 (arguing the facts pleaded in support of Maxell's allegations of active inducement are "sparse").

Maxell's complaint contains numerous allegations that allow the Court to draw the reasonable inference that Defendants had the specific intent to induce infringement. The complaint identifies the features and capabilities of the Accused Products and "Defendants' description and/or demonstration thereof, including in user manuals and advertising." It further alleges Defendants have indirectly infringed the Asserted Patents by actively inducing their subsidiaries, sister companies, affiliates, partners, and/or customers, such as brand customers in the ODM and Solutions business, to make, use, sell, and/or offer to sell and/or to import the Accused Products. *See* Dkt. No. 1, ¶¶ 35, 154-55, 198-99, 238-39, 278-79, 334-35, 381-82, 428-29. Additionally, the complaint pleads that "[b]y the time of trial, Defendants will thus have known and intended … that their continued actions would actively induce and contribute to actual infringement." *Id.*, ¶¶ 159, 203, 243, 283, 339, 386, 433. Courts in this District have held that similar allegations of intent were sufficient to state a claim for induced infringement and survive a motion to dismiss. *See Multimedia Techs. Pte. Ltd. v. LG Elecs. Inc*., No. 2:22-cv-00494-JRG-RSP, 2024 WL 1340360, at \*4 (E.D. Tex. Mar. 1, 2024), *report and recommendation adopted by* 2024 WL 1338080 (E.D. Tex. Mar. 28, 2024) (denying motion to dismiss induced infringement claims and stating that "while [plaintiff's] allegations of intent may be less substantial, … they are still sufficient here").

The complaint further points to Defendants' establishment and maintenance of affiliated companies within "the Group" to sell the Accused Products in the United States as acts inducing infringement. *See* Dkt. No. 1, ¶¶ 31, 32, 35, 57-71, 76-86; *see also Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 843 F.3d 1315, 1332 (Fed. Cir. 2016) (evidence that defendant "took affirmative acts to induce third parties to import its controller chips into the United States

wherein [] the chips necessarily infringed" is sufficient for induced infringement, although reversing on basis of erroneous jury instructions); *MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp.*, 420 F.3d 1369, 1379-80 (Fed. Cir. 2005) ("substantial technical support to [a US distributor] in the form of e-mail communications" along with "coordinat[ing] shipment dates and the quantity of wafers sent in each shipment" and making "adjustments in the manufacturing process in order to address problems [the distributor] encounters" were facts that would be sufficient for a jury to find induced infringement).

Contrary to Defendants' assertion, the complaint also (1) points to user manuals, user guides, web pages, specifications, and data sheets advertising infringing uses and instructing how to engage in infringing uses (Dkt. No. 1, ¶¶ 136, 138, 170, 215, 219, 223, 227, 254, 294, 300, 350, 353, 357, 361, 365, 368, 372, 397, 413, and 417); and (2) includes corresponding claim recitations that indicate how such use of the Accused Products infringes the Asserted Patents (*id.*, ¶¶ 135-51, 169-95, 213-35, 253-75, 293-331, 349-78, 396-25). *See RightQuestion, L.L.C. v. Samsung Elecs. Co., Ltd.*, No. 2:21-cv-00238-JRG, 2022 WL 507487, at *3 (E.D. Tex. Feb. 18, 2022) ("By pointing to literature 'advertising an infringing use' and 'instructing how to engage in an infringing use' and including corresponding claim recitations which indicate how such use of the Accused Products allegedly infringes the Asserted Patents, RightQuestion has sufficiently stated a claim for induced infringement."); *Maxell Ltd. v. Apple Inc.*, No. 5:19-cv-00036, 2019 WL 7905455, at *4 (E.D. Tex. Oct. 23, 2019) (finding a pleading sufficient where it identified the accused functionalities and included citations/screenshots of advertisements and user guides with descriptions and demonstrations for accused functionalities).

Defendants argue in their reply that the user manuals and guides, etc. referenced in the complaint are Optoma USA's, not Defendants'. Dkt. No. 48 at 8 (citing Dkt. No. 1, ¶ 136). Maxell

argues in its surreply that the user guides referenced in the complaint are identified on their face as having come from Optoma Technology. Dkt. No. 54 at 9. Maxell further asserts Defendants have made contradictory statements in their other motions to dismiss, wherein Defendants claim technical information and information showing sales of prior art products came from Defendant Coretronic, not Optoma USA. *Id.* at 9.

Even if the Court were to consider Maxell's allegations of intent without the allegations regarding user manuals, user guides, web pages, specifications, and data sheets advertising infringing, they would still be sufficient. *See Multimedia Techs.*, 2024 WL 1340360, at *4 (stating "while Multimedia's allegations of intent may be less substantial than "(1) instruction manuals for using the [Accused Products]in an infringing manner; (2) directions to customers and end-users for using the [Accused Products] in an infringing manner; and (3) advertisements and promotional materials for infringing uses of the [Accused Products]," as in *Motiva* [*Pats., L.L.C. v. Sony Corp.*, 408 F. Supp. 3d 819, 830 (E.D. Tex. 2019)], they are still sufficient here.").

Taking Maxell's allegations as true, as it must, the undersigned finds Maxell has sufficiently pleaded the knowledge and specific intent required for induced infringement.

### b. Contributory Infringement

As to contributory infringement, Defendants argue in one sentence that "Plaintiff's Complaint makes no specific allegations to support its contributory infringement claims." Dkt. No. 20 at 19.

Contributory infringement requires the defendant to have had knowledge that the product or component it sells is "especially made or especially adapted for use in an infringement" of an asserted patent. *Motiva Pats., L.L.C. v. Sony Corp.*, 408 F. Supp. 3d 819, 830 (E.D. Tex. 2019) (quoting *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1320 (Fed. Cir. 2009)). As with

induced infringement, willful blindness may satisfy the knowledge requirements for contributory infringement. *Id.* at 828. The requisite knowledge may also be circumstantially inferred from the fact that the accused product or component has no substantial non-infringing uses. *Id.* at 30.

Maxell has alleged that the accused devices are a material part of the invention and that those devices are not a staple article or commodity of commerce suitable for substantial non-infringing use. *See*, *e.g.*, Dkt. No. 1, ¶¶ 38, 157, 201, 241, 281, 337, 384, 431. The complaint's allegations of contributory infringement are sufficient at this stage. *See Liberty Access*, Cause No. 2:22-cv-00507-JRG, Dkt. No. 61 at 25-26 (finding the complaint sufficiently placed defendants on notice of plaintiff's contributory infringement theory by pleading that the accused products' special features "have no substantial uses other than ones that infringe" and "are not staple articles of commerce suitable for substantial non-infringing use"); *see also Multimedia Techs.,* 2024 WL 1340360, at *4 ("[Plaintiff] has explained how the Accused Products allow a user to practice the recited invention, such that it is plausible that there are no non-infringing uses").

Maxell also asserts that courts have found it sufficient for a plaintiff to plead that the nature of the patented technology and the accused products support the allegation that there are no substantial non-infringing uses. Dkt. No. 41 at 28 (citing *Arigna Tech. Ltd. v. Bayerische Motoren Werke AG*, No. 2:21-CV-00172-JRG, 2022 WL 610796, at *6 (E.D. Tex. Jan. 24, 2022)). Defendants argue *Arigna* is inapposite because the nature of the accused products in *Arigna* were such that there simply could not be any substantial non-infringing uses. Dkt. No. 48 at 9. (citing 2022 WL 610796, at *6 (complaint alleged infringement every time a user drove a vehicle because of the accused throttle control function)). According to Defendants, because the nature of the invention in this case does not mandate infringement, Maxell's "threadbare conclusory assertions are insufficient." *Id.* at 10. However, the issue of substantial non-infringing use is a factual inquiry

more appropriately determined based on a complete evidentiary record. *See Uniloc USA, Inc. v. Motorola Mobility L.L.C.*, No. 2:16-cv-992-JRG, 2017 WL 3721064, at *5 (E.D. Tex. May 15, 2017) ("[I]t is not the province of the Court to resolve these factual disputes at this early juncture."). At this stage, the Court finds Maxell's contentions as to non-infringing uses sufficient.

In sum, Maxell states plausible claims against Defendants for direct and indirect infringement sufficient to survive a Rule 12(b)(6) challenge. The undersigned recommends Defendants' Rule 12(b)(6) motion to dismiss be denied.

## V. RECOMMENDATION

Based on the foregoing analysis, it is hereby

**RECOMMENDED** Defendants' Motion to Dismiss Plaintiff's Complaint Under Fed. R. Civ. P. 12(b)(2), 12(b)(6), and 12(b)(7) (Dkt. No. 20) be **DENIED**.

Objections

Within fourteen (14) days after service of the magistrate judge's report, any party must serve and file specific written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(C). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.

Failure to file specific, written objections will bar the party from appealing the unobjected-to factual findings and legal conclusions of the magistrate judge that are accepted by the district court, except upon grounds of plain error, provided that the party has been served with notice that such consequences will result from a failure to object. *See Douglass v. United Servs. Auto. Ass'n,*

79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C.

§ 636(b)(1) (extending the time to file objections from ten to fourteen days).

SIGNED this the 16th day of May, 2025.

J. Boone Baxter
UNITED STATES MAGISTRATE JUDGE